UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| NATHANIEL S. MARLOW, | ) |   |
|---|---|---|
| Plaintiff, | ) |   |
| v. | ) | No. 3:21-CV-151-DCLC-HBG |
| BLOUNT COUNTY JAIL, BLOUNT COUNTY SHERIFF, and BLOUNT COUNTY CHIEF OF JAIL, | ) |   |
| Defendants. | ) |   |

### MEMORANDUM & ORDER

Plaintiff, a federal detainee housed in the Blount County Jail, has filed a pro se complaint for violation of 42 U.S.C. § 1983 [Doc. 2] and a motion for leave to proceed *in forma pauperis* [Doc. 1]. The Court will address Plaintiff's motion to proceed *in forma pauperis* prior to screening the complaint in accordance with the Prison Litigation Reform Act ("PLRA").

I. **MOTION TO PROCEED *IN FORMA PAUPERIS***

Plaintiff has not submitted the proper documents in support of his motion to proceed *in forma pauperis*. Specifically, he has not presented a certified copy of his inmate trust account for the six-month period preceding his complaint. 28 U.S.C. § 1915(a)(2). Plaintiff alleges, however, that officials at the Blount County Jail have refused to provide him with a certified copy of his inmate trust account [Doc. 2 p. 3-4]. Additionally, the Court notes that Plaintiff is a federal pretrial detainee who has been deemed indigent and appointed counsel in his criminal case [*See, e.g., United States of America v. Nathan S. Marlow*, 3:18-CR-6-RLJ-DCP, Doc. 9]. Therefore, the Court will assume that Plaintiff lacks sufficient financial resources to pay the filing fee in this action. Accordingly, pursuant to 28 U.S.C. § 1915, Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] will be **GRANTED**.

Plaintiff will be **ASSESSED** the civil filing fee of $350.00. The custodian of Plaintiff's inmate trust account will be **DIRECTED** to submit to the Clerk, U.S. District Court, 800 Market Street, Suite 130, Knoxville, Tennessee 37902 as an initial partial payment, the greater of: (a) twenty percent (20%) of the average monthly deposits to Plaintiff's inmate trust account; or (b) twenty percent (20%) of the average monthly balance in his inmate trust account for the six-month period preceding the filing of the complaint. 28 U.S.C. § 1915(b) (1) (A) and (B). Thereafter, the custodian of Plaintiff's inmate trust account shall submit twenty percent (20%) of Plaintiff's preceding monthly income (or income credited to Plaintiff's trust account for the preceding month), but only when such monthly income exceeds ten dollars ($10.00), until the full filing fee of three hundred fifty dollars ($350.00) has been paid to the Clerk. 28 U.S.C. §§ 1915(b)(2) and 1914(a).

To ensure compliance with this fee-collection procedure, the Clerk will be **DIRECTED** to mail a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined. This order shall be placed in Plaintiff's prison file and follow him if he is transferred to another correctional institution. The Clerk also will be **DIRECTED** to provide a copy to the Court's financial deputy.

## II. PLRA SCREENING

### A. Standard

Under the PLRA, district courts must screen prisoner complaints and *sua sponte* dismiss any claims that are "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or "seek[] monetary relief from a defendant who is immune from such relief." *See* 28 U.S.C. § 1915A(b). "[T]he dismissal standard articulated" by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) "governs dismissals for failure state a claim under [28 U.S.C. §§ 1915(e)(2)(B) and 1915A] because the

relevant statutory language tracks the language in [Federal Rule of Civil Procedure] 12(b)(6)." *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010). Thus, to survive an initial review under the PLRA, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

In order to state a claim under 42 U.S.C. § 1983, a plaintiff must establish that he was deprived of a federal right by a person acting under color of state law. 42 U.S.C. § 1983; *Braley v. City of Pontiac*, 906 F.2d 220, 223 (6th Cir. 1990) (stating that "Section 1983 does not itself create any constitutional rights; it creates a right of action for the vindication of constitutional guarantees found elsewhere").

Courts liberally construe pro se pleadings filed in civil rights cases and "hold [them] to less stringent standard than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520 (1972). Rather, all that is required is "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 544, 570. Allegations that give rise to a mere possibility that a plaintiff might later establish undisclosed facts supporting recovery, however, are not well-pled and do not state a plausible claim. *Id.* Further, "formulaic [and conclusory] recitations of the elements of a . . . claim," which are not supported by specific facts are insufficient to state a plausible claim for relief. *Iqbal*, 556 U.S. at 681.

**B. Analysis**

Plaintiff has sued the Blount County Jail [Doc. 1 p. 1]. However, the Blount County Jail is not a "person" under § 1983 and, therefore, is not a suable entity under this statute. *Marbry v. Corr. Med. Serv.*, No. 99-6706, 2000 WL 1720959, at *2 (6th Cir. Nov. 6, 2000) (holding that "the Shelby County Jail is not an entity subject to suit under §1983"). However, Blount County is a "person" subject to suit under § 1983, *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978), and the municipality is responsible for the Blount County Jail. As such, the Court liberally

construes Plaintiff's claims against the Blount County Jail as against Blount County, and the Clerk will be **DIRECTED** to substitute Blount County as a Defendant in the place of the Blount County Jail. Thus, the Court must determine whether the complaint states a claim against this Defendant by adequately alleging that a custom or policy of Blount County caused any violation of Plaintiff's constitutional rights. *Monell*, 436 U.S. at 690-91 (holding that a governmental entity may be liable under § 1983 only where its custom or policy causes a constitutional rights violation).

Also, for Plaintiff's allegations to state a claim upon which relief may be granted under § 1983 against the Blount County Sheriff and/or Blount County's Chief of Jail, they must contain facts from which the Court can plausibly infer that these Defendants were personally involved in or responsible for the incidents and/or conditions of confinement that Plaintiff seeks to challenge. *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009) (providing that § 1983 liability cannot be premised upon a theory of respondeat superior); *Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (providing that "a complaint must allege that the defendants were personally involved in the alleged deprivation of federal rights" to state a claim upon which relief may be granted under § 1983); *Sheehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (providing that "[a]t a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers" for a supervisory jail official to be liable under § 1983).

Accordingly, the Court will analyze each of Plaintiff's discretely numbered claims to determine whether he has adequately stated a claim that Defendants are liable under §1983 for the incidents or condition of confinement alleged.

    1.    **Food, Clothing, and Shelter**

In Claims 1, 2, 5, 6, 7, 8, 9, 11, 12, 15, 16, 18, and 19, Plaintiff claims that the following conditions of his confinement violate his constitutional rights: he is not fed the proper amount of calories per day [Claim 1], he is the third person in a two-man cell and must sleep on the floor [Claim 2]; he is denied uninterrupted sleep, as the lights are left on for approximately 18 to 20 hours per day [Claim 5]; mold and mildew grow in the air vents, which has caused him to develop headaches and a dry cough [Claim 6]; the regular pods and the quarantine pod are fed from the same uncovered cart with dirty trays [Claims 7 and 15]; the floors are not regularly cleaned [Claim 8]; approximately thirty inmates are in the recreation room for two hours at a time with only one shower, sink, and toilet [Claim 9]; the conditions constitute cruel and unusual punishment [Claim 11]; Plaintiff is forced to sleep "on a worn out broke down mat" [Claim 12]; inmates are forced to take a shower on camera [Claim 16]; food is delivered cold, which is potentially dangerous [Claim 18]; and Plaintiff is forced "to wear [a] uniform with the crotch torn out" [Claim 19].

The Court observes the well-known rule that "the Constitution does not mandate comfortable prisons." *Rhodes v. Chapman* 452 U.S. 337, 349 (1981). However, the Due Process Clause protects detainees from conditions "imposed for the purpose of punishment" before an adjudication of guilt, *Bell v. Wolfish*, 441 U.S. 520, 535 (1979), while the Eighth Amendment's prohibition against cruel and unusual punishment protects convicted prisoners from deliberate indifference on the part of detention officials. *See Farmer v. Brennan*, 511 U.S. 825, 832 (1994). The Sixth Circuit has noted that because "the punitive intent required under *Wolfish* is the same 'punishment' governed by the Eighth Amendment," the Sixth Circuit has generally applied "the deliberate-indifference test wholesale" when considering the claims of pretrial detainees. *Griffith v. Franklin Cty., Ky.*, 975 F.3d 554, 569 (6th Cir. 2020).[1]

---

[1] The Sixth Circuit has only explicitly recognized excessive force claims brought by pretrial detainees as an exception to the rule that rights under either constitutional standard are analogous.

5

Only "extreme deprivations" that deny a prisoner "'the minimal civilized measure of life's necessities" will establish a cognizable conditions-of-confinement claim under the Eighth Amendment. *Hudson v. McMillan*, 503 U.S. 1, 8-9 (1992) (citations and quotations omitted). Prison authorities may not, however, "ignore a condition of confinement that is sure or very likely to cause serious illness and needless suffering the next week or month or year." *Helling v. McKinney*, 509 U.S. 25, 33 (1993). In examining such claims, the court must determine whether the risk of which the plaintiff complains is "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk. In other words, the prisoner must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36 (1993); *see also Rhodes*, 452 U.S. at 347.

In Claim 1, Plaintiff asserts that he is not being fed "the proper amount of calories" each day [Doc. 2 p. 3]. However, this allegation does not allow the Court to plausibly infer that Plaintiff does not receive adequate nutrition to maintain good health. *Cunningham v. Jones*, 567 F.2d 653, 659-60 (6th Cir. 1977) (providing that where a prisoner's diet is sufficient to sustain the prisoner's good health, no constitutional right has been violated). As such, this allegation fails to state a claim upon which relief may be granted under § 1983.

There is nothing in Plaintiff's complaint that would suggest that the fact that the facility's lights are left off only a few hours per day [Claim 5], that he is the third person in a two-man cell, that he sleeps on an old mat, [Claims 2, 12], that the recreation area only has one toilet, shower,

---

*See, e.g., Kingsley v. Hendrickson*, 576 U.S. 389, 395-96 (2015) (holding pretrial detainee claiming excessive force under Fourteenth Amendment need only show that force used was objectively unreasonable, abrogating subjective intent prong of Fourteenth Amendment deliberate indifference claim). *See, e.g., Griffith*, 975 F.3d at 570 (noting Sixth Circuit "has generally stayed out of the fray" of whether Kingsley applies to conditions-of-confinement claims because it has found each time it has confronted the issue that "the same result would obtain under either" test).

6

and sink, [Claim 9], or that the floors are not cleaned on a schedule [Claim 8] create a grave risk to Plaintiff's health or constitute an extreme deprivation of some basic human necessity. Therefore, Claims 2, 5, 8, 9, and 12 also fail to assert a cognizable violation of Plaintiff's constitutional rights [Doc. 2 p. 4-5].

In Claims 7, 15, and 18, Plaintiff asserts that inmates are fed cold food on trays sometimes containing residue from past meals, and that these trays arrive at the regular pod on an uncovered cart that has been to the quarantine unit before it arrives at the regular unit. He also maintains that the persons feeding the inmates do not change their gloves between units [*Id.* at 4]. However, Plaintiff does not set forth any facts from which the Court can plausibly infer that these incidents or conditions create a grave risk to him, that a custom or policy of Blount County caused these incidents or conditions, or that the individual Defendants were aware of, responsible for, or involved in these incidents or conditions. Moreover, cold food is not a violation of Plaintiff's constitutional rights, and he provides no support for his speculative allegation that his food may grow bacteria before it is served to him due to a lack of food warmers. *Prophete v. Gilless*, 869 F.Supp. 537, 538-39 (W.D. Tenn. 1994) (finding "[c]old food does not pose [] a danger, and thus does not constitute the deprivation of a necessity of life" and that the "plaintiff's speculation that the food runs the risk of being contaminated with bacteria between the kitchen and cells" was "factually delusional"). Thus, these allegations fail to state a claim upon which relief may be granted under § 1983.

In Claim 6, Plaintiff claims that the jail vents have mold and mildew, which causes Plaintiff to cough and experience sporadic migraines [Doc. 2 p. 4]. However, Plaintiff does not state how he knows that the jail vents have mold and mildew, nor has he set forth any basis for his assumption that the mold and mildew are causing him sporadic headaches and coughing. Even if the Court

7

assumes that they are, however, nothing in the complaint allows the Court to plausibly infer that a custom or policy of Blount County caused the condition of the vents, or that the individual Defendants are disregarding this condition. As such, this allegation fails to state a claim upon which relief may be granted under § 1983.

In Claim 11, Plaintiff states that his claims constitute cruel and unusual punishment [*Id.* at 5]. This conclusory statement fails to state a claim upon which relief may be granted under § 1983.

In Claims 16 and 19, Plaintiff alleges that the jail showers have camera surveillance and that he is forced to wear a uniform "with the crotch torn out" [*Id*. at 5]. Plaintiff does not provide any additional facts that would suggest that these conditions violate the Constitution, however, as he does not allege that females are watching the surveillance or that the tear in his uniform exposes his naked body to female guards. As such, he has not adequately alleged a constitutional violation based on the right to bodily privacy. *Boyer v. Daviess Cty. Det. Ctr.*, No. 4:19-CV-P77-JHM, 2019 WL 5225459, at *3 (W.D. Ky. Oct. 16, 2019) (finding that a prisoner's allegation that males had to shower in view of each other failed to state a claim upon which relief may be granted under § 1983); *Smith v. Long*, No. 3:18-CV-00061, 2018 WL 3831394, at *4-5 (M.D. Tenn. Aug. 13, 2018) (finding that a prisoner's allegation that the jail had cameras in bathroom stalls failed to rise to the level of a constitutional violation because the plaintiff did not allege that females viewed the footage) (collecting cases). Moreover, a torn uniform, might cause Plaintiff to suffer some incidental indignity, but it does not implicate any threat to his health or safety, and thus, is not a violation of constitutional magnitude. *See, e.g., Tapp v. Proto*, 718 F.Supp.2d 598, 619 (E.D. Pa. 2010) (finding inmate forced to wear dirty, torn, and stained undergarments during his confinement did not state a constitutional violation). Accordingly, these claims will be dismissed.

    **2.**    **Access to Courts**

In Claims 13, 20, and 21, Plaintiff contends that Defendants have interfered with his ability to prepare legal documents [*See* Doc. 2 p. 5-6]. Specifically, Plaintiff maintains the facility refuses to allow other individuals to pick up Plaintiff's legal materials to send to the courts, officers refuse to fill out or notarize legal documents, and that because all inmates must share a kiosk to study law, he does not get enough time to research [*Id.*]. However, Plaintiff does not allege that these actions have prejudiced any meritorious case of his, and therefore, these allegations fail to state a claim upon which relief may be granted under § 1983. *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (holding that a plaintiff must plead and prove that his meritorious claims have been prejudiced by the alleged denial of access to the courts to state a claim for denial of access to courts); *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996) ("An inmate who claims his access to the courts was denied fails to state a claim without any showing of prejudice to his litigation.").

### 3. Religious Practice

In Claim 4, Plaintiff asserts that Defendants denied him "religious material for over a month" and then produced the wrong material by producing "a Koran when [he] requested a Holy Quran" [Doc. 2 p. 4].[2]

The Free Exercise Clause of the First Amendment to the United States Constitution provides that "Congress shall make no law . . . prohibiting the free exercise [of religion]." U.S. Const. amend I. As a prisoner, Plaintiff retains his First Amendment rights that "are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system," including the right to free exercise of religion. *Pell v. Procunier*, 417 U.S.

---

[2] Plaintiff does not identify the distinction between the Koran and the Holy Quran, and the Court notes that "Koran" is an alternate spelling of both "Quran" or "Qur'an." *See, e.g., Sutton v. Rasheed*, 323 F.3d 236, 241 n. 4 and 9 (3d Cir. 2003).

817, 822 (1974); *Barhite v. Caruso*, 377 F. App'x 508, 510 (6th Cir. 2010). In evaluating whether a prisoner complaint states a claim for violation of his right to free exercise of religion, the court must first determine if the prisoner has shown that his religious beliefs are sincerely held and may only reach the issue of whether a restriction is valid where the plaintiff does so. *Barhite*, 377 F. App'x at 510. Where a prison regulation "place[s] a substantial burden on the observation of a central religious belief or practice," it is valid only if "a compelling government interest justifies the burden." *Hernandez v. C.I.R.,* 490 U.S. 680, 699 (1989). Plaintiff has not pled any facts from which the Court can plausibly infer that any act of the individual Defendants or any custom or policy of Blount County has substantially burdened any of his religious practices. Therefore, this allegation fails to state a claim upon which relief may be granted under § 1983.

    **4.    Phone Calls**

In Claim 14, Plaintiff states that he cannot call his attorney on an unrecorded phone line [Doc. 2 p. 4]. However, "a prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. The exact nature of telephone service to be provided to inmates is generally to be determined by prison administrators, subject to court scrutiny for unreasonable restrictions." *Washington v. Reno*, 35 F.3d 1093, 1100 (6th Cir. 1994). Moreover, the Sixth Circuit has cautioned that district courts should not interfere with administration of jails except in the most compelling situations. *Glover v. Johnson*, 855 F.2d 277 (6th Cir. 1988) (setting forth public policy concerns regarding court interference with jail administration). Here, Plaintiff does not allege that his attorney could not arrange and initiate a non-recorded phone call, or that he lacked other means, such as in-person visits, to communicate confidentially with his counsel. Therefore, Plaintiff has not set forth any facts to support a finding

that this is a compelling situation requiring the Court to interfere in jail administration. Accordingly, this claim will not proceed.

### 5. Grievances

In Claims 10 and 22, Plaintiff alleges that he has been denied the ability to file grievances or speak to a United States Marshal to "address" his grievances [Doc. 2 p. 5-6]. However, inmates have no constitutional right to a grievance procedure, and they therefore have no interest in having any such grievances heard and/or satisfactorily resolved. *LaFlame v. Montgomery Cnty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (citing *Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996)). Accordingly, these claims fail to state a claim under § 1983.

### 6. Medical Expenses

In Claim 23, Plaintiff claims the Blount County Jail is violating his constitutional rights by requiring him to pay for medical care, even though, as a federal detainee, "the Marshals pay for all" his medical expenses [Doc. 2 p. 6]. Plaintiff does not allege that he has been denied any necessary medical care, however, and an inmate is not deprived of any constitutional due process interest or property right by a policy requiring payment for medical expenses. *White v. Corr. Med. Servs.*, 94 F. App'x 262, 264 (6th Cir. 2004) ("It is constitutional to charge inmates a small fee for health care where indigent inmates are guaranteed service regardless of ability to pay"); *see also Bailey v. Carter*, 15 F. App'x 245 (6th Cir. 2001) (holding policy requirement of payment for medical services, where funds are available, does not violate an inmate's constitutional rights). Therefore, this claim will be dismissed.

### 7. Mail

In Claims 3, 17, and 20, Plaintiff alleges that he can only send postcards through the mail and is denied any extra postage [Doc. 2, p. 4, 6]. To the extent that Plaintiff alleges that these incidents have violated his right to access the courts, these allegations fail to state such a claim.

*Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). However, Plaintiff also "has a First Amendment right to send mail," and any "restriction on this right is valid 'only if it is reasonably related to legitimate penological interests.'" *Rodgers v. Hawley*, 14 F. App'x 403, 408 (6th Cir. 2001) (citing *Hudson v. Palmer*, 468 U.S. 517, 547 (1984) and quoting *Turner v. Safley*, 482 U.S. 78, 89 (1987)). Taken together and liberally construed in Plaintiff's favor, Plaintiff's allegations in these claims allow the Court to plausibly infer that a custom or policy of Blount County has interfered with Plaintiff's First Amendment right to send mail, and the Court cannot determine whether this interference was reasonable based on Plaintiff's complaint. Accordingly, these claims will proceed against Blount County.

### III. CONCLUSION

For the reasons set forth above:

1. Plaintiff's motion for leave to proceed *in forma pauperis* [Doc. 1] is **GRANTED**;

2. Plaintiff is **ASSESSED** the civil filing fee of $350.00;

3. The custodian of Plaintiff's inmate trust account is **DIRECTED** to submit the filing fee to the Clerk in the manner set forth above;

4. The Clerk is **DIRECTED** to provide a copy of this memorandum and order to the custodian of inmate accounts at the institution where Plaintiff is now confined and the Court's financial deputy;

5. The Clerk is **DIRECTED** to substitute Blount County as a Defendant in the place of the Blount County Jail;

6. Even liberally construing the complaint in Plaintiff's favor, it fails to state a claim upon which relief may be granted under § 1983, except as to Plaintiff's claim that a custom or policy of Blount County has interfered with his First Amendment right to send mail;

7. Accordingly, all other claims in the complaint and Defendants Blount County Sheriff and Blount County Chief of Jail are **DISMISSED**;

8. The Clerk is **DIRECTED** to send Plaintiff a service packet (a blank summons and USM 285 form) for Defendant Blount County;

9. Plaintiff is **ORDERED** to complete the service packet and return it to the Clerk's Office within twenty-one (21) days of entry of this order;

10. At that time, the summons will be signed and sealed by the Clerk and forwarded to the U.S. Marshal for service, *see* Fed. R. Civ. P. 4;

11. Plaintiff is **NOTIFIED** that if he fails to timely return the completed service packet, this action will be dismissed;

12. Defendant Blount County shall answer or otherwise respond to the complaint within twenty-one (21) days from the date of service. If Defendant Blount County fails to timely respond to the complaint, it may result in entry of judgment by default against it; and

13. Plaintiff is **ORDERED** to immediately inform the Court and Defendant Blount County or its counsel of record of any address changes in writing. Pursuant to Local Rule 83.13, it is the duty of a pro se party to promptly notify the Clerk and the other parties to the proceedings of any change in his or her address, to monitor the progress of the case, and to prosecute or defend the action diligently. E.D. Tenn. L.R. 83.13. Failure to provide a correct address to this Court within fourteen (14) days of any change in address may result in the dismissal of this action.

**SO ORDERED**.

**ENTER:**

                                                         s/Clifton L. Corker
                                                       United States District Judge